**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kolela Mpoyo,<br><br>            Plaintiff,<br>vs.<br><br>FIS Management Services, LLC,<br><br>            Defendant. | No. CV-17-04307-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 71) For the following reasons, the Court will grant the Motion.

**I.    Background**

Plaintiff was employed by Defendant as a "Systems Administrator II" from 2013 to 2017. (Docs. 1 at 1; 72 at 1) In late 2015, Defendant requested that its employees participate in a health assessment program, which included a biometric screening to test for height, weight, body mass index, blood pressure, blood glucose, and cholesterol levels. (Docs. 1 at 2; 72-2 at 28) Defendant hired a third-party vendor, Health Fitness, to administer the testing. (Docs. 72 at 2; 72-2 at 27) Plaintiff participated, and his biometric results were flagged as "high risk" for prostate cancer. (Doc. 1 at 2) Health Fitness recommended that Plaintiff follow-up to receive additional testing. (Docs. 1 at 3; 72-2 at 54, 58-59) Plaintiff underwent additional testing in February and March of 2016. (Doc. 1 at 3) In order to undergo the testing, Plaintiff requested time off from work in March 2016. (Doc. 72-2 at 48-50) Plaintiff did not tell Defendant that he was undergoing cancer testing. (Doc. 72-2 at

48-50) Instead, Plaintiff simply told his supervisor that he was "sick." (Doc. 72-2 at 48-50)

In January of 2016—unbeknownst to Plaintiff—Defendant began a plan to reduce its operating costs through a reduction in its workforce. (Doc. 72 at 4) After looking at past performance reviews for everyone in Plaintiff's department, Defendant decided to terminate Plaintiff and one other employee. (Doc. 72 at 4-5) Defendant terminated the other employee during the last week of March, but Plaintiff was out "sick" at that time. (Doc. 72 at 5) A few days later, on April 4, 2016, Defendant informed Plaintiff of his termination over the phone. (Doc. 72 at 5) Plaintiff received a diagnosis of prostate cancer on April 27, 2016. (Doc. 72-2 at 55)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on August 11, 2016. (Docs. 1 at 8-9; 72-2 at 85) Subsequently, Plaintiff filed the Complaint and commenced this action on November 27, 2017. (Doc. 1) In count one, Plaintiff alleges that Defendant unlawfully terminated him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. In count two, Plaintiff alleges that Defendant unlawfully discriminated against him based on his genetic information in violation of the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff *et seq*. In count three, Plaintiff alleges that Defendant unlawfully discriminated against him based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. In count four, Plaintiff alleges that Defendant unlawfully interfered with his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Defendant answered the Complaint on March 26, 2018. (Doc. 11)

On April 5, 2019, Defendant filed a Motion for Summary Judgment. (Doc. 71) The Court issued an Order on April 15, 2019, notifying Plaintiff of the Motion and specifically instructing Plaintiff to respond by May 15, 2019. (Doc. 74) Plaintiff did not file the Response until October 8, 2019. (Doc. 92) Defendant filed a Motion to Strike Plaintiff's Response. (Doc. 95) The Court granted the Motion and struck Plaintiff's untimely Response. (Doc. 98)

## II. Standard of Review

After viewing the evidence in the light most favorable to the non-moving party, summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249-50 (citation omitted).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings, depositions, interrogatories, admissions, or affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id.* When a party fails to respond to a motion for summary judgment, the moving party still has an "affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law." *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).

## III. Discussion

Defendant asserts that the Court is required to analyze Plaintiff's ADA, GINA, and ADEA discrimination claims under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1] (Doc. 71 at 9) The framework generally applies to a plaintiff who alleges retaliatory conduct by his or her employer after the plaintiff participated in a protected activity. *See Reeves v. Sanderson Plumbing Prod., Inc.*,

---

[1] Under the *McDonnell Douglas* framework, an employee must first establish a prima facie case of discrimination. If the employee has justified a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer is pretext for the unlawful discrimination. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

530 U.S. 133, 142 (2000). The framework is also appropriate when a plaintiff attempts to establish a claim of discrimination by using only circumstantial evidence. *Id.* at 141. The Court finds that the record in this case only contains circumstantial evidence to support Plaintiff's various claims of discrimination. Therefore, the Court will apply *McDonnell Douglas* to analyze whether the record supports a genuine dispute of material fact for each discrimination claim. *See Smith v. Noah Webster Basic Sch.*, 389 Fed.Appx. 698, 699 (9th Cir. 2010) (evaluating an ADA claim based on circumstantial evidence of discrimination under *McDonnell Douglas*); *Diaz*, 521 F.3d at 1207 (evaluating an ADEA claim based on circumstantial evidence of discrimination under *McDonnell Douglas*); *Punt v. Kelly Serv.*, No. 14-cv-02560-CMA-MJW, 2016 WL 67654, at *12-13 (D. Colo. Jan. 6, 2016) (evaluating a GINA claim based on circumstantial evidence of discrimination under *McDonnell Douglas*).

### A. ADA Claim

"To prevail on an ADA claim of unlawful discharge, the plaintiff must establish a prima facie case by showing that: (1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001) (citation omitted). "It follows that the plaintiff must show that the defendant had knowledge of his disability when making the adverse employment decision." *Davis v. Con-Way Freight Inc.*, 139 F.Supp.3d 1224, 1232 (D. Or. 2015).

For purposes of its Motion for Summary Judgment, Defendant does not dispute that Plaintiff had cancer at the time of his termination and that cancer is a disability covered by the ADA. (Doc. 71 at 5) Instead, Defendant challenges the third element of Plaintiff's cause of action. Defendant maintains that Plaintiff was fired due to a reduction in operating expenses. (Docs. 71 at 2; 72 at 4) Defendant asserts that Plaintiff failed to tell anyone that he was being tested for cancer, and Plaintiff was not officially diagnosed with prostate cancer until April 27, 2016—after his termination. (Docs. 71 at 4-5; 72 at 5) Defendant further asserts that it did not know, and could not have known, that Plaintiff had cancer

when it made the decision to fire Plaintiff on or before April 4, 2016. (Doc. 71 at 4-5)

In Plaintiff's deposition held on February 21, 2019, he conceded that he did not tell anyone specifically that he was undergoing cancer testing. (Docs. 66; 72-2 at 48-50) However, Plaintiff asserted that Defendant was put on notice that he potentially had cancer because Defendant had access to his biometric test results. (Doc. 72-2 at 53) Defendant rebuts this assertion, however, by providing an affidavit from the Senior Health Promotions Manager at Health Fitness, which states that Health Fitness never sent Defendant Plaintiff's individual biometric test results. (Doc. 72-2 at 28) Furthermore, the individual who made the decision to fire Plaintiff submitted an affidavit stating that she did not know Plaintiff had cancer when the decision was made to fire him. (Doc. 72-2 at 4) Even viewing the facts in the light most favorable to Plaintiff, the Court finds that there is no genuine dispute as to whether Defendant knew that Plaintiff had cancer when he was terminated. Therefore, summary judgment is appropriate for Plaintiff's ADA claim.

### B. GINA Claim

GINA makes it illegal for employers to terminate or otherwise discriminate against an employee because of the employee's genetic information. 42 U.S.C. § 2000ff-1(a)(1). "The basic intent of GINA is to prohibit employers from making a predictive assessment concerning an individual's propensity to get an inheritable genetic disease or disorder based on the occurrence of an inheritable disease or disorder in a family member." *Poore v. Peterbilt of Bristol, L.L.C.*, 852 F.Supp.2d 727, 730 (W.D. Va. 2012) (internal citation and quotations omitted). To plead a prima facie case under GINA, a plaintiff must show: (1) that he was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from his genetic tests. *Carroll v. Comprehensive Women's Health Serv.*, No. 3:16cv1509, 2017 WL 4284386, at *6 (M.D. Penn. Sept. 27, 2017).

In the Complaint, Plaintiff generally asserts that Defendant violated GINA by collecting his health information. (Doc. 1 at 5) Defendant argues that Plaintiff's biometric testing does not fall under GINA and Defendant was never privy to any of Plaintiff's

genetic information. (Doc. 71 at 8-9) In support of Defendant's argument, the Promotions Manager at Health Fitness stated in her affidavit that participation in the wellness program was voluntary. (Doc. 72-2 at 27-28) In addition, the Promotions Manager stated that Health Fitness collected the individual health screenings and only presented Defendant with the aggregate data—such as year-to-year comparisons of the average testing results. (Doc. 72-2 at 28) Furthermore, the supervisor who fired Plaintiff submitted an affidavit stating that she was never made aware of Plaintiff's individual testing results or any other information relating to Plaintiff's health. (Doc. 72-2 at 4) The Court finds that there is no genuine dispute of material fact regarding Plaintiff's GINA claim. Therefore, summary judgment is appropriate. *See* 42 U.S.C. § 2000ff-9 (stating that employers will not violate GINA for using, disclosing, or acquiring "medical information that is not genetic information about a manifested disease [or] disorder . . . that has or may have a genetic basis"); s*ee also Green v. Whataburger Rest. LLC*, No. 5:17-CV-243-DAE, 2018 WL 6252533, at *3-4 (W.D. Tex. Oct. 9, 2018) (dismissing a complaint because the plaintiff's assertion that she was discriminated against because her daughter "might have cancer" was insufficient to state a claim under GINA); *cf. Ortiz v. City of San Antonio Fire Dep't,* 806 F.3d 822, 826-27 (5th Cir. 2015) (holding that a fire department did not violate GINA by requiring an employee to participate in its mandatory wellness program).

### C. ADEA Claim

Under the ADEA, a prima facie case of age discrimination consists of four elements: (1) the plaintiff was at least forty years old; (2) he was performing the job satisfactorily; (3) he was discharged; and (4) the circumstances of the discharge give rise to an inference of age discrimination. *Diaz*, 521 F.3d at 1207-08 (internal citation and quotations omitted). "An inference of discrimination can be established by showing the employer had a continuing need for the employees' skills and services in that their various duties were still being performed or by showing that others not in their protected class were treated more favorably." *Id.* (internal citation and quotations omitted).

At the time of Plaintiff's termination, he was 51 years old. (Doc. 1 at 5) Plaintiff

asserted in the Complaint that "immediately[] after Plaintiff['s] employment was terminated, the Defendant was still hiring more employees to fill similar positions the Plaintiff held[,]" and "Defendant advertised other positions, for which the Plaintiff was qualified, but the Defendant never invited the Plaintiff for interviews." (Doc. 1 at 4) Defendant denied the allegations. (Doc. 11 at 4) Defendant maintains that Plaintiff was fired due to expense cuts and because he received the lowest performance reviews of all the Systems Administrator II employees. (Doc. 71 at 2) Defendant further asserts that, of the six Systems Administrator II employees who were subject to termination, five were between 45 and 55. (Doc. 71 at 7) In addition, Defendant asserts that the oldest incumbent in the Systems Administrator II position, who was older than Plaintiff, was retained. (Doc. 71 at 7) The Court finds that there is no evidence in the record to suggest that age played a role in Defendant's decision to terminate Plaintiff. In addition, the Court finds that there is no evidence in the record to support Plaintiff's assertion that Defendant hired someone new for Plaintiff's job and/or refused to interview Plaintiff for a different job. Therefore, summary judgment is appropriate for Plaintiff's ADEA claim. *Lieberman v. Gant,* 630 F.2d 60, 67 (2d Cir. 1980) (explaining that when an employer offers a specific explanation for an employment decision that "is reasonably attributable to an honest even though partially subjective evaluation of [an employee's] qualifications, no inference of discrimination can be drawn").

### D. FMLA Claim

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right" provided by the statute. 29 U.S.C. § 2615(a)(1). To prevail on a claim of unlawful interference, a plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *See Bachelder v. Am. W. Airlines*, 259 F.3d 1112, 1125 (9th Cir. 2001) (distinguishing interference under the FMLA from causes of action for retaliation or discrimination). Thus, to survive summary judgment, a plaintiff need only show that: (1) he took FMLA-protected leave; (2) he suffered an adverse

employment action; and (3) the adverse action was causally related to his FMLA leave. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146-47 (3rd Cir. 2004). "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b). However, "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." *Id.*

Defendant argues that Plaintiff cannot satisfy the first element of his FMLA claim. (Doc. 71 at 12) In Plaintiff's deposition, he conceded that he did not specifically take FMLA leave or otherwise tell his supervisor the reason for taking time off. (Doc. 72-2 at 50) Instead, Plaintiff generally stated that he was "sick." (Doc. 72-2 at 50) Plaintiff asserted that Defendant should have known he was on leave for an FMLA-related reason because Defendant was in possession of his biometric test results. (Doc. 72-2 at 53)

The Court finds that—as stated before—Defendant could not have reasonably known that Plaintiff had cancer. The human resources manager assigned to help Plaintiff submitted an affidavit in support of Defendant's Motion, stating that Plaintiff never informed anyone of any potential medical condition or that he intended to take FMLA-protected leave. (Doc. 72-2 at 7) In addition, the Promotions Manager from Health Fitness stated that Defendant never received Plaintiff's individual testing results. (Doc. 72-2 at 28) Consequently, Plaintiff cannot establish a prima facie FMLA claim, and summary judgment is appropriate.

**IV. Conclusion**

Based on the foregoing reasons, the Court finds that Defendant is entitled to judgment as a matter of law for each count in the Complaint. Therefore, Defendant's Motion for Summary Judgment will be granted. Accordingly,

///

///

///

///

**IT IS ORDERED** that Defendants Motion for Summary Judgment (Doc. 71) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk's Office shall terminate the case accordingly and dismiss the case with prejudice.

Dated this 6th day of December, 2019.

Honorable Steven P. Logan
United States District Judge